IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KHURAM SHAIKH, | ) |
| | ) |
| Plaintiff, | ) No. 21-cv-5715 |
| | ) |
| v. | ) Judge Jeffrey I. Cummings |
| | ) |
| FAIRWAY INDEPENDENT | ) |
| MORTGAGE CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq*., it is unlawful to "make any call using a prerecorded voice to any telephone number assigned to a cellular telephone service" unless the call is made with the "prior express consent of the called party." 47 U.S.C. §227(b)(A)(iii). Plaintiff Khuram Shaikh ("Shaikh") brings this suit against defendant Fairway Independent Mortgage Corporation ("Fairway") based on his assertion that Fairway violated the TCPA when it sent him one or more prerecorded telemarketing voice calls without his prior express consent. Fairway moves for summary judgment based on its assertion that it had Shaikh's express consent to send him the prerecorded calls.

In its motion, Fairway does not claim that Shaikh *directly* provided it with express consent to send him the calls in question. Instead, Fairway centers its argument on the fact that Shaikh entered a hybrid clickwrap agreement with non-party LendingTree LLC ("LendingTree") that provided LendingTree with his "express 'written' consent to share [his] information with up to five (5) Network partners, and for LendingTree, parties calling on behalf of LendingTree partners, Network partners, or an authorized third party on their behalf to call [him]." (*See* Dckt. #55 at 6; Dckt. #59 at 3). It is undisputed that LendingTree did not provide Fairway—one of

1

LendingTree's approximately 2,500 Network partners—with Shaikh's contact information. Nonetheless, Fairway asserts that Shaikh's agreement with LendingTree provided Shaikh's express consent to receive prerecorded calls from Fairway.

However, whether a party has expressly consented to receive prerecorded calls from a defendant is a question of fact under the TCPA. For the reasons set forth below, a reasonable jury could find that Shaikh's agreement with *LendingTree* did not provide his express consent to receive prerecorded calls from *Fairway*—a LendingTree Network partner with whom LendingTree did not share Shaikh's contact information. Consequently, Fairway's motion for summary judgment, (Dckt. #48), is denied.

### I. LEGAL STANDARD FOR CONSIDERATION OF SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment *unless* it is a genuine dispute as to a material fact); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (issues of material fact are material if they are outcome determinative). To determine whether a genuine issue of material fact exists, all facts and reasonable inferences must be drawn in the light most favorable to the non-moving party. *King v. Hendricks Cnty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020). Summary judgment is granted only if "no reasonable trier of

fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up).

## II. FACTUAL BACKGROUND

The facts set forth below, which are undisputed unless otherwise noted, are drawn from the following submissions: defendant's amended Local Rule 56.1 statement of material facts ("DSOF") and accompanying exhibits, (Dckt. #53, *et seq.*, ##55, 56, 60); plaintiff's Rule 56.1 statement in opposition to DSOF ("DSOF Resp.") (Dckt. #58 (first section), (hereinafter Dckt. #58-A) and accompanying exhibits (Dckt. #58-A, *et seq.*); plaintiff's Rule 56 statement of additional facts ("PSOF") (Dckt. #58 (second section), hereinafter Dckt. #58-B);[1] defendant's response to PSOF ("PSOF Resp.") (Dckt. #64); the amicus brief by third-party LendingTree and its accompanying exhibits (Dckt. #68, *et seq.*); and defendant's response thereto (Dckt. #72).[2]

In the late Fall of 2020, plaintiff Khuram Shaikh ("Shaikh") was searching for a mortgage lender on the internet when he came across www.lendingtree.com, a website owned and operated by LendingTree. (DSOF Resp. ¶¶5–6). LendingTree is a marketing lead generation company that collects information from prospective borrowers, analyzes that information, and then matches the prospective borrower with one or more prospective lenders. (PSOF Resp. ¶¶1–2).

On November 10, 2020, Shaikh (or someone on his behalf) entered his telephone number into a box on LendingTree's website that allowed the user to click a button called

---

[1] The Court, within its discretion, will not strike Dckt. #58 despite the fact that Shaikh combined his PSOF and his response to DSOF in derogation of Local Rule 56.1(b), which requires the filing of a *separate* response to Fairway's statement of facts and statement of additional material facts, because the PSOF and the DSOF are clearly demarcated.

[2] On August 1, 2022, LendingTree filed a motion for leave to file an amicus brief. (Dckt. #68). Fairway did not oppose LendingTree's motion on the condition that it be given an opportunity to respond. (*Id.*). Fairway subsequently filed an unopposed motion to file a response to LendingTree's amicus brief, which the Court granted, and Fairway filed its response on September 20, 2022. (Dckt. ##70–72). Shaikh did not oppose LendingTree's motion.

"View My Rates." (DSOF Resp. ¶7).

[Screenshot of LendingTree webpage with "Mobile or home phone number" input field, a green "View My Rates" button, and disclosure text below beginning "By clicking on the 'View My Rates' button above, you consent, acknowledge, and agree to the following:"]

(*See* Dckt. #59 at 3; Dckt. #55 at 6).[3] The text directly beneath the "View My Rates" button contains the following language:

> By clicking on the "View My Rates" button above, you consent, acknowledge, and agree to the following: …
>
> \*\*\*
>
> We take our privacy very seriously. You are providing express "written" consent to share your information with up to five (5) Network partners, and for LendingTree, parties calling on behalf of LendingTree partners, Network partners, or an authorized third party on their behalf to call you (including through automated means; e.g. autodialing, text and pre- recorded messaging) via telephone, mobile device (including SMS and MMS—charges may apply) ….

---

[3] The Court incorporates the exhibit offered by Shaikh (Dckt. #59 at 3) because it is more legible than Fairway's exhibit of this screen (Dckt. #55 at 6). Fairway asserts that Shaikh's exhibit depicts incorrect colors and fonts, however, it does not dispute the content. (*See* Dckt. #65).

4

*\*\*\**

(*Id*. (emphasis in original)) (hereafter, "LendingTree Consent"). The term "partners" is hyperlinked, as indicated by an underline and different colored letters, to LendingTree's Network "partner" list featuring close to 2,500 potential lenders, one of which was defendant Fairway. (PSOF Resp. ¶4; *see also* DSOF Resp. ¶¶9–13).

On November 10, 2020, upon acquiring Shaikh's contact information through its website, LendingTree transmitted the information to two lending companies who are its Network partners: Broker Solutions d/b/a New American Funding and Neighborhood Loans. (PSOF Resp. ¶6). LendingTree also provided Shaikh the contact information of these potential lenders, as shown in the following graphic.

**MORTGAGE PURCHASE**
**Congratulations!**
These lenders want your business and may call you soon!

New American Funding — ★★★★★ (52,666)
Digital Experience · Great Customer Service
Representatives standing by to discuss your offer - call now!
800-450-2010
[Apply Online] [See Details]
NMLS ID:6606

Neighborhood Loans, Inc. — ★★★★★ (20)
Great Customer Service
Representatives standing by to discuss your offer - call now!
847-727-8261
[Email Lender] [See Details]
NMLS ID:222982

(*See* Dckt. #59 at 4). At the time of the match, Emory Culver was an employee of New American Funding. (PSOF Resp. ¶8). As a result, when LendingTree matched Shaikh with New American Funding, Culver received Shaikh's contact information. (*Id.*; DSOF Resp. ¶¶15–16). Fairway did not obtain Shaikh's contact information from LendingTree at any point. (PSOF Resp. ¶9).

5

Starting in November 2020, Culver assisted Shaikh in securing a mortgage. (DSOF Resp. ¶¶15–16). For the following three months, Culver and Shaikh communicated through emails, text messages, and telephone calls. (*Id.* ¶16). On two occasions during these communications, Shaikh provided Culver with his cell phone number via email so that Culver could assist him with effectuating his mortgage financing with New American. (*See* Dckt. #72-1 at 2, 4).

In September 2021, Culver left his employment with New American Funding and began working for Fairway. (DSOF Resp. ¶19; *see* PSOF Resp. ¶7). LendingTree maintains agreements with its Network partners, and LendingTree's contracts with both New American and Fairway bar them, respectively, from transferring consumer information obtained through LendingTree's matching process. (Dckt. #68-1 at 4).

In particular, as LendingTree explained in its amicus brief:

> Under the New American and Fairway contracts with LendingTree, New American (inclusive of its employees) was barred from selling, disclosing, or otherwise transferring any consumer information received from LendingTree to any affiliated or unaffiliated third party; from assigning or delegating any of its rights; and was required to protect and not reveal any confidential consumer information. In turn, any purported assignment/delegation of consumer information to any other party is strictly void under the contracts.

(Dckt. #68-1 at 4 (citing Dckt. #68-2 at 2–3 (Adams Aff. ¶9)); *see also* Dckt. #68-3 at 19 (Contract between LendingTree and Broker Solutions [d/b/a New American Funding] ¶7.1) ("Lender may not assign its right or delegate its obligations under this Agreement without prior written consent of LendingTree . . . ")). As such, it is LendingTree's position that the LendingTree Consent did not, and could not, extend to Fairway because Fairway was never matched with Shaikh by LendingTree. (Dckt. #66-1 at 9).

In contravention of the Network partner agreement between LendingTree and New

6

American, Culver brought Shaikh's contact information with him to his new job at Fairway and provided it to Fairway. (PSOF Resp. ¶10). On September 13, 2021, Culver (on Fairway's behalf) left Shaikh a prerecorded voice message stating:

> Hey, how is it going? This is Emory Culver here with Fairway Mortgage actually now. I previously was with New American Funding and recently decided to part ways. Nothing person[al] but a new venture. I actually partnered with my sister who has been in the mortgage industry for about 12 years now. Yeah. So be sure to touch base. I hope you're doing well. Obviously we haven't spoken in a little while. But, yeah, I'm not exactly sure where you're at as far as your mortgage. If you're looking to reevaluate things. Possibly paying mortgage insurance, want to drop that off, maybe a lower interest rate, maybe pull some cash out. Just in general maybe if you have questions about, you know, buying a new house or a move in or whatever it might be. You know, nothing—no agenda. But if you have questions, feel [free] to reach out I'm always here, I'm always available, and if you have any questions about the market or just in general about where you're standing, feel free to give me a shout. My number is [REDACTED]. My Email is [REDACTED]. So either way. Hope you're doing well. Hope everything is going good with the house and you still have it. And yeah. Hope you reach out and like I said save you some money. That would be awesome. All right. Thanks so much. Talk to you soon

(PSOF Resp. ¶¶11–12; *see* DSOF Resp. ¶19). Shaikh responded with a text to Culver, stating:

> Hi, Emory. Thank you for all your help during the mortgage process. It has only been seven months since the mortgage at 2.5 interest. I don't have 20 percent equity to remove that PMI insurance. I'll keep your number and once I have 20 percent in the house, I'll love to refinance and drop the PMI. Thanks, Khuram.

(Dckt. #49-2 at 8–9 (Deposition Transcript of Shaikh)).

On October 26, 2021, about six weeks after receiving Culver's voicemail, Shaikh filed this TCPA action against Fairway. (DSOF Resp. ¶21; *see* Dckt. #1). On November 10, 2021, Shaikh received another prerecorded voice message from Culver (on Fairway's behalf) stating:

> Hey, how is it going? This is Emory Culver. I know it's been a while since we had last spoke when we had closed on your property but really just want to touch base and see how things are going. There's been some changes since I last spoke to you. I actually ended up started my own team with Fairway, so super excited about that. And really at this point just touching base. I'm not sure if you still own the property that we had closed here or, you know, maybe you've moved on or whatever the situation might be. Really just touching base to see if there's any questions I can answer, any way I can help out. So if you can give me a shot. My cell is probably

7

>  the easiest way to reach me, text or call. It's [REDACTED]. You can shoot me an Email if that's easier for you [REDACTED], that's Mary Charlie. Yep. Really at the end of the day just wanted to see how things are going. Hope everything is going well with you and the family. Really just touch base if you need anything from me, reach out and we will take it from there. Hope you are doing well and I'll look forward to hearing from you. Bye.

(PSOF Resp. ¶14).

### III. ANALYSIS

The Telephone Consumer Protection Act ("TCPA") renders it unlawful to "make any call (other than a call made with the prior express consent of the called party) using a[] . . . prerecorded voice to any telephone number assigned to a cellular telephone service." 47 U.S.C. §227 (b)(A)(iii) (cleaned up).

Fairway seeks summary judgment in its favor on Shaikh's TCPA claim on several grounds, including that by providing his express consent to LendingTree, Shaikh gave express consent receive prerecorded calls from Fairway within the meaning of the TCPA. Because the Court need not reach Fairway's remaining arguments if a rational jury could find that Fairway did not have prior express consent to contact Shaikh as contemplated by the TPCA, the Court first turns to that argument.

**A. There is an Issue of Fact as to Whether a Reasonable Jury Could Find That Shaikh Consented to Fairway's Prerecorded Calls.**

Prior express consent is an affirmative defense for which Fairway bears the burden of proof, *see Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 964 (7th Cir. 2020), and "[t]he scope of consent is a fact-intensive inquiry." *See Kahil v. McGrath Colosimo Ltd.*, No. 17 C 7474, 2018 WL 11216391, at *3 (N.D.Ill. Aug. 22, 2018); *Thomas v. Abercrombie & Fitch Co.*, 301 F.Supp.3d 749, 759 (E.D.Mich. 2018) (denying summary judgment on a TCPA claim where there was a genuine issue of material fact as to whether plaintiff gave her express written consent to receiving text messages from defendant); *Jackson v.*

8

*Pmab, LLC*, Civ. A. No. 16-1705, 2017 WL 4316096, at *4 (D.N.J. Sept. 28, 2017) (denying summary judgment because genuine issue of material fact existed as to whether plaintiff provided express consent). Thus, Fairway cannot prevail on its motion for summary judgment unless it shows that no reasonable jury could find that Shaikh did not provide his prior express consent to receive prerecorded calls from Fairway. As set forth below, the Court finds that a reasonable jury could find the calls were made without Shaikh's prior express consent, such that Fairway's motion for summary judgment must be denied.

Again, Fairway does not claim that Shaikh directly provided it with his express consent to receive automated calls from Fairway. Rather, Fairway bases its "prior express consent" argument on the LendingTree Consent. In particular, Fairway reads the LendingTree Consent as reflecting that Shaikh "'consent[ed], acknowledge[ed], and agree[d]' that he was 'providing express written consent' for 'Network partners [Fairway] . . . to call [him] (including through . . . prerecorded messaging) . . . '" (Dckt. #65 at 3; Dckt. #72 at 2–4). Effectively, Fairway's position is that Shaikh consented to receive calls from *any* of LendingTree's approximately 2,500 Network partners, even if the Network partner, like Fairway, did not receive Shaikh's contact information from LendingTree. This, according to Fairway, is the only reasonable interpretation of the LendingTree Consent. The Court disagrees.

To begin, Fairway's proffered reading of the LendingTree Consent ignores and gives no meaning to the clause of the LendingTree Consent which states that Shaikh provided his consent to LendingTree to share his information with "up to five (5) Network partners." That is impermissible. The rules of contract interpretation require the Court to "interpret the [LendingTree Consent] as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose." *Wehrle v. Cincinnati Ins. Co.*,

9

719 F.3d 840, 842 (7th Cir. 2013) (cleaned up).  The Court is therefore required to interpret the LendingTree Consent to give effect to the "up to five (5) Network partners" limitation.  By giving that language effect, the Court finds that a reasonable jury could read the LendingTree Consent as reflecting Shaikh's express consent to receiving calls from *only* the (up to) five Network partners (out of the total pool of 2,500 Network partners)[4] with whom LendingTree shared his contact information.  As noted above, LendingTree never shared Shaikh's contact information with Fairway.

Indeed, both Shaikh and LendingTree—the two parties to the LendingTree Consent—understood the LendingTree Consent in this fashion.  In particular, LendingTree's contracts with its Network partners (including New American and Neighborhood Loans) prevented the Network partners that received consumer information from LendingTree "from selling, disclosing, or otherwise transferring" that information "to any affiliated or unaffiliated third party."  (Dckt. #68-1 at 5).  Furthermore, any Network partner's purported assignment/delegation of consumer information to any other party was void under its contract with LendingTree.  (*Id.*).  Neither LendingTree nor Shaikh would have had any reason to suspect that a Network partner who received Shaikh's contact information would breach its contract by sharing his information with a competing Network partner who did not receive his information from LendingTree.

Finally, the notification that LendingTree sent Shaikh after it transferred his contact information to New American and Neighborhood Loans stated that only *those* two lenders wanted his business and "may call [him] soon!"  (Dckt. #59 at 4).  There would have been no basis for Shaikh to expect that a Network partner, like Fairway, that did not receive Shaikh's

---

[4] Thus, according to LendingTree, "[a]lthough Fairway is a network partner of LendingTree's generally (and therefore is *eligible* to be matched with consumers via LendingTree's website), it was not a network partner of LendingTree's for Plaintiff's information, request, and consent, and therefore never received Plaintiff's information, request, and consent from LendingTree." (Dckt. #68-1 at 4).

10

contact information from LendingTree, would contact him. This is so because a Network partner who was not matched with Shaikh by LendingTree would have had no way of knowing that Shaikh was interested in obtaining financing or that he had consented to *any* entity contacting him via an automated, prerecorded call.

For these reasons, a reasonable jury could reject Fairway's interpretation of the LendingTree Consent and find that Fairway obtained Shaikh's contact information through unauthorized means.[5]

### B. A Reasonable Jury Could Find That Shaikh's Transmission of His Phone Number to Culver During the New American Transaction Did Not Constitute Consent to Receive Pre-Recorded Calls from Fairway.

Fairway also asserts that Shaikh's transmission of his cell phone number to Culver (then a New American employee) while the two were working to effectuate Shaikh's mortgage financing through New American constituted Shaikh's consent to receive prerecorded calls from Fairway once Culver became a Fairway employee. According to Fairway, "[t]he fact that it was a loan officer of one entity who initially called as opposed to that same loan officer calling, for the same reason, when employed by Fairway, is immaterial." (Dckt. #50 at 13 (citing *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1046–47 (9th Cir. 2017))). However, *Van Patten* is distinguishable. In that case, the Ninth Circuit held that a plaintiff's prior express consent given to an entity remained in effect notwithstanding the fact that the entity changed its brand identity because the entity's "ownership and operation" did not change. *Van Patten*, 847 F.3d at 1046.

---

[5] In any event, even presuming that Fairway's interpretation of the LendingTree Consent is objectively reasonable, this would, at most, show that the LendingTree Consent is reasonably susceptible to more than one interpretation. This would render the LendingTree Consent ambiguous and preclude summary judgment and the jury would have to determine the meaning of the Consent. *See, e.g., Cent. States, S.E. & S.W. Areas Pension Fund v. Kroger Co.*, 73 F.3d 727, 732 (7th Cir. 1996) ("When parties suggest different, yet reasonable interpretations of a contract, the contract is ambiguous.") (cleaned up); *Cont'l Cas. Co. v. Nw. Nat. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005) (stating that the general rule that when a contract's language is ambiguous, summary judgment is inappropriate.).

11

Here, Culver's prior employer (New American) is a totally different company from his current employer (Fairway).

The Court will not draw an inference against Shaikh (the nonmovant) and infer that Shaikh's action in consenting to Culver contacting him on his cell phone in connection with the New American mortgage transaction constituted his "prior express consent" to receiving a prerecorded message from Fairway regarding refinancing that featured Culver's voice. As the Seventh Circuit has made clear, "providing one's phone number does not provide *carte blanche* consent to receive automated marketing messages of any kind." *Blow v. Bijora, Inc.*, 855 F.3d 793, 805 (7th Cir. 2017) (cleaned up).

And, as the Federal Communications Commission has recognized, even consumers who provide their telephone number for legitimate, non-telemarketing purpose do not expect to receive calls "that go beyond the limited purpose for which . . . consent may have been granted." *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 3056813, at *3 (N.D.Ill. July 7, 2014); *Van Patten*, 847 F.3d at 1044 ("Because the TCPA does not define the phrase 'prior express consent,' we turn to the FCC's Orders and Rulings, which interpret and clarify the term."); *Toney v. Quality Res., Inc.*, 75 F.Supp.3d 727, 737 (N.D.Ill. 2014) ("Rather, to the extent the FCC's orders establish a rule, it is that the scope of a consumer's consent depends on its context and the purpose for which it is given. Consent for one purpose does not equate to consent for all purposes."); *Kahil*, 2018 WL 11216391, at *3 (same). A reasonable jury could find that Shaikh gave Culver permission to call him in connection with his effort to obtain financing from New American, and for no other purpose.

Furthermore, the prior express consent that Shaikh provided to Culver to contact him by phone while Culver was employed at New American is not transferrable to Fairway. *See, e.g.*,

12

*Physicians Healthsource*, 950 F.3d at 967. Although "[t]he TCPA does not expressly address whether, and to what extent, an entity may extend an individual's prior express permission to another entity," the Seventh Circuit considered the statutory requirements and found that:

> it would seem odd if a company could solicit express prior permission to send fax advertisements, then transfer that permission to a different company who in turn may send advertisements with impunity until the consumer affirmatively terminates its previous permission.

*Id.*; *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 849 (7th Cir. 2022).[6]

For these reasons, a reasonable jury could find that Shaikh's act of providing his cell phone number to Culver (then a New American employee) during Culver's effort to assist Shaikh in obtaining mortgage financing from New American did not constitute his prior express consent to receiving a prerecorded voice message from Fairway that featured Culver.

## Conclusion

For these reasons, Fairway's motion for summary judgment, (Dckt. #48), is denied.

**Date:   March 4, 2025**

                                                                                                        _____
                                                                                                        **Jeffrey I. Cummings
                                                                                                        United States District Court Judge**

---

[6] It is true, as Fairway asserts, that a party may grant prior express consent to a "group of possible senders," (Dckt. #50 at 13, *quoting Gorss*, 29 F.4th at 849), and Fairway asserts that Shaikh did so here because the LendingTree Consent provides that LendingTree's Network partners could call him. However, as explained above in Section III(A), a reasonable jury could find that Shaikh's express prior consent under the LendingTree Consent was limited to the up to five Network partners with whom LendingTree shared his contact information.